UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

CORY BLANKENSHIP,         )
                          )
        Plaintiff,     )
                          )
v.                       )     NO.   3:19-cv-146
                          )
METROPOLITAN GOVERNMENT OF  )     JUDGE RICHARDSON
NASHVILLE AND DAVIDSON      )     MAG. JUDGE FRENSLEY
COUNTY TENNESSEE,         )
                          )     JURY DEMAND
        Defendant.    )

## **PLAINTIFF'S PROPOSED SPECIAL JURY INSTRUCTIONS AND VERDICT FORM**

Plaintiff Cory Blankenship respectfully submits the following proposed jury instructions and verdict form.[1]

---

[1] Plaintiff presented proposed special joint instructions to defendant's counsel but counsel for the parties were unable to agree on joint special instructions.

1

## <u>INTRODUCTORY INSTRUCTION – DISABILITY DISCRIMINATION CLAIM</u>

This case is brought by the Plaintiff, Cory Blankenship, based upon the Defendant, Metropolitan Government of Nashville and Davidson County, Tennessee's alleged violations of the Americans with Disabilities Act, as amended, 42 U.S.C. §12101, et seq. This law is commonly referred to as the "ADA."

The ADA makes it unlawful for an employer to discriminate against a qualified individual on the basis of his disability with respect to job application procedures, hiring, advancement of employees, compensation, job training, discharge of employees, and other terms, conditions and privileges of employment.

The overall purpose of the ADA is to prohibit employers from making adverse employment decisions based on stereotypes and generalizations associated with the individual's disability rather than on the individual's actual characteristics. Under the ADA, people with disabilities ought to be judged on the basis of their abilities; they should not be judged nor discriminated against based on unfounded fear, prejudice, ignorance, or mythologies; people ought to be judged on the relevant medical evidence and the abilities they have.

**Authority:** *E.E.O.C. v. Murray, Inc.*, 175 F.Supp.2d 1053 (M.D. Tenn. 2001), citing *EEOC v. Prevo's Family Mkt., Inc.*, 135 F.3d 1089, 1097 (6th Cir.1998) and *Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir.1998) (quoting 136 Cong. Rec. § 7422-03, 7347 (daily ed. June 6, 1990) (statement of Sen. Harkin)).

## **DEFINTION OF DISCRIMINATE UNDER THE ADA**

Under the ADA, the term "discriminate" includes using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities.

**Authority:** 42 U.S.C. §12101(b)(1); 42 U.S.C. §12112(a); 42 U.S.C. §12112(b)(6).

# DISABILITY – DEFINED

The ADA defines "disability" with respect to an individual as a physical or mental impairment that substantially limits one or more major life activities of an individual, or if the individual is subjected to a prohibited action because of an actual or perceived physical impairment whether or not the impairment itself is perceived to limit a major life activity.

An impairment is substantially limiting if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. Nonetheless, not every impairment will constitute a disability.

The primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether an individual's impairment substantially limits a major life activity. Accordingly, the threshold issue of whether an impairment "substantially limits" a major life activity should not demand extensive analysis.

In determining whether Plaintiff's impairment substantially limited one of his major life activities, you should compare his ability to with that of the average person. In doing so, you should also consider: (1) the nature

and severity of the impairment; (2) how long the impairment will last or is expected to last; and (3) the permanent or long-term impact, or expected impact, of the impairment.

The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures. Mitigating measures include, but are not limited to medication, medical supplies, equipment, or appliances. In determining whether an impairment substantially limits a major life activity, you may consider evidence of the expected course of a particular disorder without medication, therapies, or surgery.

**Authority**: 42 U.S.C. §12102(1) and (3), 29 C.F.R. Part 1630, at §§1630.2(j)(1) and (5); Fifth Circuit Pattern Jury Instructions at §11.8.

## MAJOR LIFE ACTIVITIES

Major life activities include the operation of a major bodily function, including the endocrine system.

**Authority:**  42 U.S.C. § 12102(2)(B).

## **QUALIFIED – DEFINED**

The term "qualified" with respect to an individual with a disability, means that at the time of the employment decision affecting him, the Plaintiff satisfied the requisite skill, experience, education and other job-related requirements of his employment position and, with or without reasonable accommodation, could perform the essential functions of such position.

Authority: 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(m).

**BURDENS OF PROOF – DISABILITY DISCRIMINATION CLAIM**

In this case, Plaintiff contends that Defendant engaged in disability discrimination in violation of the ADA when it revoked its offer of employment to Plaintiff for the position of Fire Fighter because it used a standard or selection criterion that required any candidate for the position of Fire Fighter with Type 1 diabetes to produce four hemoglobin A1C tests (measured at intervals of 2 to 3 months) over the last 12 months prior to evaluation.

To establish disability discrimination, Plaintiff must prove by a preponderance of the evidence that (1) he was a qualified person with a disability, and (2) defendant revoked its offer of employment to Plaintiff by using a standard or criterion that screens out or tends to screen out persons with Type 1 diabetes.

If you find that Plaintiff has established these elements then your verdict must be for Plaintiff unless you find that Defendant has met it burden of proving by a preponderance of the evidence that the standard or criterion it used to revoke the job offer is job-related and consistent with business necessity and such performance cannot be accomplished by reasonable accommodation.

To establish this defense, Defendant must prove by a preponderance of the evidence that the standard or criterion it used was:

1. uniformly applied;

2. job-related for the position in question;

3. consistent with business necessity; and

4. cannot be met by a person with Type 1 diabetes even with a reasonable accommodation.

If you find that each of the elements on which the plaintiff has the burden of proof has been proved, your verdict should be for the plaintiff, unless you also find that the defendant has proved this affirmative defense, in which event your verdict should be for the defendant.

**Authority:** 7-19-21 Memorandum Opinion of the Court (Doc. No. 47) at pp. 8-9 (PageID # 721-722); 42 U.S.C. §12112(b)(6); 42 U.S.C. §12113(a); Fifth Circuit Pattern Jury Instructions §11.12(B) (excerpt attached); Ninth Circuit Model Civil Jury Instructions §12.10, available at https://www.ce9.uscourts.gov/jury-instructions/node/220.

## JOB-RELATED AND CONSISTENT WITH BUSINESS NECESSITY

The purpose of the law requiring standards or selection criteria that screen out individuals with disabilities to be job-related and consistent with business necessity is to ensure that individuals with disabilities are not excluded from job opportunities unless they are actually unable to do the job. It is to ensure that there is a fit between job criteria and an applicant's (or employee's) actual ability to do the job. In order to meet its burden to show job-relatedness and business necessity, an employer must demonstrate that its challenged qualification standard is both (i) based on actual ability rather than on general physical or mental impairment and (ii) necessary for the operation of its business. Selection criteria that exclude, or tend to exclude, an individual with a disability or a class of individuals with disabilities because of their disability but do not concern an essential function of the job would not be consistent with business necessity. The business necessity defense applies to across-the-board standards that are uniformly applied, as opposed to actions or decisions taken as to particular, individual employees.

**Authority:** *E.E.O.C. v. Murray, Inc.*, 175 F. Supp. 2d 1053, 1063 (M.D. Tenn. 2001). 29 C.F.R. § 1630, App. § 1630.10; Court's Memorandum Opinion (Doc. No. 47, at pp. 8, 11-12 (PageID # 721, 724-725).

In order to meet the job-related, consistent with business necessity standard, the screening must be designed to isolate individuals who are incapable of performing the essential functions of the position due to physical or mental limitations. Where, as in this case, the defendant screens for specific medical conditions rather than actual physical or mental abilities, it can only meet this burden by establishing that all individuals with the specified conditions necessarily will have the accompanying physical or mental limitations that prevent them from being able to perform the essential functions of the position.

**Authority:** *E.E.O.C. v. Murray, Inc.*, 175 F.Supp.2d 1053, 1065-1066 (M.D. Tenn. 2001).

## REASONABLE ACCOMMODATION – DEFINED

The term *reasonable accommodation* means:

Modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position; or

Modifications or adjustments that enable a covered entity's employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities.

*Reasonable accommodation* may include but is not limited to:

Job restructuring; part-time or modified work schedules; reassignment to a vacant position; acquisition or modifications of equipment or devices; appropriate adjustment or modifications of examinations, training materials, or policies; the provision of qualified readers or interpreters; and other similar accommodations for individuals with disabilities.

To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.

**Authority**:  42 U.S.C. § 12111(9); 29 C.F.R. §1630.2(m).

## DAMAGES GENERALLY

If you determine that Defendant discriminated against Plaintiff on the basis of his disability, then you must determine the amount of damages that Defendant has caused Plaintiff.

## EFFECT OF INSTRUCTION AS TO DAMAGES

The fact that I have instructed you as to the proper measure of damages should not be considered as indicating any view of mine as to which party is entitled to your verdict in this case. Instructions as to the measure of damages are given for your guidance only in the event you should find in favor of Plaintiff from a preponderance of the evidence in the case in accordance with the other instructions.

**Authority:** O'Malley, Grenig & Lee, *Federal Jury Practice and Instructions – Civil,* Vol. 3 § 106.02 (5th ed. 2000).

# BACK PAY

If you find in favor of Plaintiff, you must award as actual damages an amount that reasonably compensates him for any lost wages and benefits, taking into consideration any increases in salary and benefits, including pension, that he would have received had the unlawful conduct not occurred. Basically, you should make Plaintiff whole for any wages or other benefits that he has lost as a result of Defendant's unlawful conduct.

**Authority:** American Bar Association, *Model Jury Instructions: Employment Litigation* § 1.07[2] (2nd ed. 2005).

# MITIGATION OF DAMAGES

Plaintiff has a duty to mitigate damages. Any back pay and employment benefits you award Plaintiff shall be reduced by any employment earnings and benefits he earned or could have earned through reasonable diligence since his loss of employment.

In attempting to mitigate damages, Plaintiff is not required to accept any offer of employment, or abandon his home or place of residence to seek other employment, but is only required to exercise reasonable diligence in seeking other employment of a similar or comparable nature.

Defendant has the burden of establishing that Plaintiff failed to use reasonable diligence in mitigating damages following the revocation of the job offer by Defendant. Defendant must prove both the availability of suitable and comparable substitute employment, and the lack of reasonable diligence on the part of Plaintiff. Defendant must establish that equivalent positions were available with virtually identical promotional opportunities, compensation and benefits, job responsibilities, working conditions, and status.

**Authority:** T.P.I. – Civil 11.76 (5th ed. 2005) (modified); *Raismas v. Michigan Dept. of Mental Health*, 714 F.2d 614, 624 (6th Cir. 1983); *Killian v. Yorozu Automotive Tennessee, Inc.*, 454 F.3d 549, 556-57 (6th Cir. 2006); *Ford v. Nicks*, 866 F.2d 865, 873 (6th Cir. 1989); *Frye v. Memphis State University*, 806 S.W.2d 170, 173 (Tenn. 1991).

# COMPENSATORY DAMAGES

If you find that Defendant discriminated against Plaintiff on the basis of his disability, then you must determine an amount that is fair compensation for his damages. You may award compensatory damages only for injuries that Plaintiff proved were caused by Defendant's alleged wrongful conduct.

The damages that you award must be fair compensation—no more and no less.

You may award damages for any emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life or other non-pecuniary losses that Plaintiff experienced as a consequence of Defendant's discrimination. No evidence of the monetary value of such intangible things as pain and suffering has been, or need be, introduced into evidence. There is no exact standard for fixing the compensation to be awarded for these elements of damage. Any award you make should be fair in light of the evidence presented at the trial.

In determining the amount of any damages that you decide to award, you should be guided by common sense. You must use sound judgment in fixing an award of damages, drawing reasonable inferences from the facts in evidence. You may not award damages based on sympathy, speculation, or guess work. On the other hand, the law does not require that Plaintiff prove the amount of his damages with mathematical precision, but only with as much definiteness and accuracy as circumstances permit.

**Authority:** 42 U.S.C. §1981a(b)(3); O'Malley, Grenig & Lee, *Federal Jury Practice and Instructions – Civil,* Vol. 3 § 171.90 (5th ed. 2001).

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

CORY BLANKENSHIP, )
)
Plaintiff, )
)
v. )        NO.   3:19-cv-146
)
METROPOLITAN GOVERNMENT OF )        JUDGE RICHARDSON
NASHVILLE AND DAVIDSON )        MAG. JUDGE FRENSLEY
COUNTY TENNESSEE, )
)        JURY DEMAND
Defendant. )

## VERDICT FORM

We the jury find unanimously as follows:

1.      Did Defendant revoke its job offer to Plaintiff by using a standard or criterion that screens out or tends to screen out persons with Type 1 diabetes?

_____ YES                          _____ NO

2.      If you answered "yes" to Question 1, has the defendant proved by a preponderance of the evidence that the standard or criterion it used is job-related and consistent with business necessity as defined in the Court's instructions?

_____ YES                          _____ NO

3.      If you answered "no" to Question 2, then what amount of compensatory damages and back pay as defined in the Court's instructions is Plaintiff entitled to?


$_____ Compensatory Damages

$_____ Back Pay

$_____ TOTAL


_____
JURY FOREPERSON

Date: _____

Respectfully submitted,

_Wade B. Cowan_

Wade B. Cowan (SC #9403)
P.O. Box 50617
Nashville, Tennessee 37205
Telephone: (615) 352-2331
wcowan@dhhrplc.com


s/ John W. Griffin

John W. Griffin, Jr. (admitted *pro hac*)
Marek, Griffin & Knaupp
203 N. Liberty Street
Victoria, Texas 77901
(361) 573-5500
jwg@lawmgk.com
*Counsel for plaintiff*


### CERTIFICATE OF SERVICE

I certify that on April 25, 2022, the foregoing Plaintiff's Proposed Jury Instructions and Verdict Form was served electronically through the CM/ECF System on the following:

J. Brooks Fox
Assistant Metropolitan Attorney
P.O. Box 196300
Nashville, TN 37219
*Counsel for Defendant*


_Wade B. Cowan_

Wade B. Cowan