IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CORY BLANKENSHIP, ) | |
| ) | |
| Plaintiff, ) | |
| ) | NO. 3:19-cv-00146 |
| v. ) | JUDGE RICHARDSON |
| ) | |
| METROPOLITAN GOVERNMENT ) | |
| OF NASHVILLE AND DAVIDSON ) | |
| COUNTY, TENNESSEE, ) | |
| ) | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff's Motion for Permanent Injunction (Doc. No. 97, "Motion"), supported by an accompanying memorandum (Doc. No. 98). Defendant filed a response (Doc. No. 100), and Plaintiff filed a reply (Doc. No. 101). For the reasons stated herein, Plaintiff's Motion is **DENIED**.

### BACKGROUND[1]

This action arises from Plaintiff's application to become a firefighter with Defendant Metropolitan Government of Nashville and Davidson County. Plaintiff applied for the position in August 2017 and received a conditional offer of employment in October 2017, contingent on a medical examination. On December 15, 2017, Defendant withdrew its offer and advised Plaintiff

---

[1] Much of this Background section is copied verbatim from the Background section of the Court's Memorandum Opinion on the Parties' cross-motions for summary judgment (Doc. No. 47). Unless otherwise noted, these facts are taken from the Parties' responses to Statements of Undisputed Facts (Doc. Nos. 31 and 33) and are included only to provide additional context for the reader. The Court perceives that the evidence at trial did not contradict the accuracy of any part of the factual recitation herein.

that he had been medically disqualified for the position by Defendant's Civil Service Medical Examiner ("CSME"), Dr. Gill Wright.

Plaintiff is a person with Type 1 diabetes. Defendant's denial of Plaintiff's application was based upon Plaintiff's disqualification under the National Fire Protection Association ("NFPA") standards for Fire/EMT Trainees, adopted by Defendant in 1991. (Doc. No. 21-1 at 7). Under the NFPA standards, Type 1 diabetes is considered a "Category A" medical condition that "would preclude a person from performing as a member in a training or emergency operational environment by presenting a significant risk to the safety and health of the person or others, unless the candidate meets 12 specific criteria." (Doc. No. 21-2 at 16 and 23). Plaintiff's disqualification was based on a single one of those 12 criteria, that being the quarterly A1C test standard found at NFPA § 6.20.1(1)(g)(ii) ("the NFPA Standard")[2], which requires the candidate to present medical evidence that allows the fire department physician to determine whether the candidate "has had hemoglobin A1C measured at least four times a year (intervals of 2 to 3 months) over the last 12 months prior to evaluation if the diagnosis of diabetes has been present over one year." (Doc. No. 21-2 at 23).

After his employment offer was withdrawn, Plaintiff requested a medical waiver from Defendant's Civil Service Commission, based on his treating endocrinologist's assessment that quarterly A1C tests are unnecessary because of Plaintiff's demonstrated high level of education, motivation, control of his diabetes, and stability of A1C, and because "the lack of 4 A1C tests in the 12 months before his medical evaluation is not in any way evidence that he was at an increased

---

[2] When the Court utilizes the term "NFPA Standard" it is referencing NFPA § 6.20.1(1)(g)(ii), which specifies the A1C testing requirement. To the extent the Court utilizes the term "NFPA standard/s," it is referring generally to the NFPA standards as a whole, and not the A1C Standard, which is specific to the case.

risk for hypoglycemia that would have created a risk to himself or others as a Fire Fighter." (Doc. No. 27-2 at 6). After a hearing, the Civil Service Commission denied Plaintiff's medical waiver request.

On February 14, 2019, Plaintiff filed this action based upon the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 121101, et seq., asserting a claim of discrimination for the usage of "qualification standards . . . that screen out or tend to screen out" individuals with disabilities. 42 U.S.C. § 12112(b)(6).

A jury trial was held in May 2022, and the jury returned a verdict in favor of Plaintiff, awarding him $125,300 based in part on its determination that Defendant had unlawfully revoked its offer of employment to Plaintiff by utilizing a qualification standard that was not uniformly applied, job-related, and consistent with business necessity. Plaintiff subsequently filed the present Motion requesting the Court to permanently enjoin Defendant from utilizing the NFPA Standard at issue.

**STANDARD**

The ADA incorporates remedies available under Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C. § 12117 (citing 42 U.S.C. § 2000e-5). Title VII's enforcement provisions state, "[i]f the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court *may* enjoin the respondent from engaging in such unlawful employment practice." 42 U.S.C.A. § 2000e-5 (emphasis added). The Sixth Circuit has held that "the granting of injunctive relief is a matter for the discretion of the trial court." *Prentice v. Am. Standard, Inc.*, 972 F.2d 348 (6th Cir. 1992).

Once the plaintiff has established that the defendant is liable under the ADA, and subsequently requests injunctive relief, the defendant has the burden of production, meaning it "is

required to shoulder the burden of going forward with evidence . . . tending to show that it has taken, and will continue to take, effective measures to prevent a recurrence of the actionable conduct." *Prentice*, 972. F.2d at 348. However, "[t]he ultimate burden of proving that injunctive relief is necessary remain[s] with the plaintiff." *Id.* The plaintiff "may satisfy this burden by 'persuad[ing] the trial judge that there [is] a cognizable danger that [the] defendant [will] not take effective steps to prevent the conduct from recurring.'" *Equal Emp. Opportunity Comm'n v. Dolgencorp, LLC*, 277 F. Supp. 3d 932, 954 (E.D. Tenn. 2017), *aff'd*, 899 F.3d 428 (6th Cir. 2018) (quoting *Prentice*, F.2d at 348).

## DISCUSSION

In the present Motion, Plaintiff asks "the Court to enter a permanent injunction preventing defendant from using the National Fire Protection Association medical qualification [S]tandard at issue in this case, NFPA 1582 §6.20.1(g)(ii), to disqualify candidates for the position of Fire Recruit or Fire Fighter in the Nashville Fire Department."[3] (Doc. No. 98 at 1).

Plaintiff states that the requested injunction is necessary "because the facts in the record and presented at trial demonstrate that it is likely that the defendant will engage in recurrent violations of the ADA absent an injunction." (Doc. No. 98 at 5). As support for this argument, Plaintiff notes that the NFPA Standard has been formally adopted by Defendant's Civil Service

---

[3] As indicated, the request relates only to the NFPA Standard, and not the NFPA standards as a whole. As will be discussed, Plaintiff later amended this request to be for an injunction only against "the use of the qualification standard [*i.e.*, the NFPA Standard] for purposes of assessing the fitness for duty of employees of the Nashville Fire Department." (Doc. No. 101 at 2).

To the extent that the parties or the Court refer to NFPA 1582, NFPA 1582 represents the part of the NFPA standards wherein the NFPA Standard is located. NFPA 1582 contains the "Standard on Comprehensive Occupational Medical Program for Fire Departments" as created by the National Fire Protection Association, which includes the NFPA Standard (at § 6.20.1(g)(ii), as noted above). *See* Doc. No. 21-2 at 6. The NFPA Standard, in other words, exists within a larger "standard" called NFPA 1582.

Commission. (*Id.* (citing to Defendant's Memorandum in Support of their Motion for Summary Judgment, which notes that "The NFPA's standards were adopted by the Metro Fire Department in 1991." (Doc. No. 22 at 1))). Plaintiff also states that the Defendant's Fire Chief testified at trial that the NFPA Standard should remain in place for fitness-for-duty examinations, and that Defendant's Chief Witness, Dr. Gill Wright, "gave no indication at trial of any intent not to continue to use the [S]tandard." (Doc. No. 98 at 6). Finally, Plaintiff contends that Dr. Wright remains employed with Defendant (albeit as the current Director of Health and not the CSME), and that further points to the need for injunctive relief. (*Id.* (citing *Dolgencorp*, 227 F. Supp. at 957 ("[I]njunctive relief is justified . . . where the individuals who were found to have discriminated remain the defendant's primary decision-makers." (quoting *EEOC v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1579 (7th Cir. 1997))))).

Defendant argues that the requested injunctive relief is not necessary, and that Plaintiff failed to carry his burden of showing a "cognizable danger" of another ADA violation. To bear its own burden of production, Defendant notes that, "in response to the Jury's verdict in this case, Metro submitted to Human Resources/Civil Service Commission language which would provide clarification on [] NFPA 1582." (Doc. No. 100 at 3). The proposed policy clarification states that "the Civil Service Medical Examiner shall utilize his or her own independent judgment in the interpretation and implementation of the entire NFPA 1582 guide." (Doc. No. 99 -1). The proposed clarification also states,

> For any provision in the NFPA 1582, where it mentions a requirement for A1C testing for firefighting candidates and employees who have diabetes, that requirement shall not be interpreted as an across the board, rigid standard, and any medically-viable alternatives may be considered, to the satisfaction of the Civil Service Medical Examiner. For example, where the NFPA 1582 references a requirement for quarterly A1C tests within a twelve month period for firefighter candidates, the Civil Service Medical Examiner shall allow such candidate to elect instead to provide some other objective evidence, to the satisfaction of the Civil

> Service Medical Examiner, of blood glucose management over the preceding year that shows sufficient blood sugar control and establishes that the individual is not at significant risk of diabetic ketoacidosis or incapacitating hypoglycemia.

(*Id.*). Defendant notes that, "Plaintiff's counsel . . . was involved in the drafting of the language for the proposed policy change." (Doc. No. 100 at 3). Defendant also argues that Plaintiff has failed to show how the requested injunction serves to "redress *his* injury and make him whole." (*Id.* (emphasis in original)). According to Defendant "Plaintiff has been made whole and no further equitable remedies are required." (*Id.* at 4).

In reply, Plaintiff first argues that the proposed policy clarification has not yet been enacted, so the Court should not consider it as a measure against recurrent violations. (Doc. No. 101 at 4). Further according to Plaintiff, even if the policy clarification was adopted by Defendant's Civil Service Commission, it is discretionary, not mandatory, and therefore allows the CSME full control over whether to offer flexibility to the NFPA Standard. As to Defendant's second argument, Plaintiff concedes that he would not be subject to the NFPA Standard for hiring purposes but would potentially be subject to the Standard for "purposes of assessing the fitness for duty of employees of the Nashville Fire Department." (Doc. No. 101 at 2). Accordingly, Plaintiff limits the scope of his injunction request to fitness-for-duty examinations.

The Court finds that Defendant's proposed policy change, which Defendant acknowledges has been presented to the Civil Service Commission, successfully reflects efforts by Defendant to ensure its usage of the NFPA Standard does not again violate the ADA. Unlike the defendant in *Dolgencorp*, Defendant here is specifically attempting to address what the jury found to be wrongdoing on its part, by proposing policy changes to the NFPA Standard. *See* 277 F. Supp. 3d at 957 ("Furthermore, it is also telling that defendant has not admitted any wrongdoing in this case."); *see also Equal Emp. Opportunity Comm'n v. Exel, Inc.*, No. 1:10-CV-3132-SCJ, 2014 WL

12538889, at *2 (N.D. Ga. Mar. 13, 2014) (finding that the defendant's refusal to admit to any wrongdoing contributed to its failure to "prove that the Title VII violation is unlikely to recur"). Additionally, though Dr. Wright—the individual who made the ultimate decision to revoke Plaintiff's employment offer—still works for Defendant, it appears to the Court that he no longer works in a decision-making role for purposes of the application of the NFPA Standard. Instead, Dr. Wright currently serves as the Director of Health (Doc. No. 99 at 1), and Plaintiff has pointed to no evidence that any individual or entity other than the CSME or the Civil Service Commission (if a medical waiver is sought) has a role in determining whether current or prospective firefighters are qualified under the NFPA. In fact, Plaintiff himself acknowledges that the "sole decision-makers in this case were defendant's Civil Service Medical Examiner, Dr. Gill Wright, and defendant's Civil Service Commission," not the Director of Health. (Doc. No. 98 at 5-6). For that reason, the Court finds unavailing Plaintiff's argument that an individual who was found to have acted discriminatorily remains employed as a decision-maker for Defendant. Additionally, the Court finds Plaintiff's concern that he could be deemed unfit for duty due to the NFPA Standard too speculative to warrant injunctive relief. Indeed, it strikes the Court as highly unlikely that Defendant, after receiving a verdict against it for violating the ADA due to its rigid application of the NFPA Standard, would undertake an almost identical course of action in administering its fitness-for-duty exams.

For these reasons, the Court finds that Plaintiff has failed to satisfy his burden of showing why a permanent injunction is necessary in the present case. Additionally, the Court finds that the scope of the proposed permanent injunction (as narrowed by Plaintiff as discussed above) is too broad. The Court derived the very distinct impression that part of Plaintiff's argument at trial for the unlawfulness of the application of the NFPA Standard *to him* (which is what the trial was

about) was that: (1) he was unusually disciplined and attentive in his management of his diabetes, such that his diabetes was under control, and documented as such, to an unusual degree; and therefore (2) even assuming *arguendo* that the application of the NFPA Standard could be applied to *some* firefighter candidates, it could not be applied lawfully to *him* in particular. For these reasons, the Court would be loath to assume that the NFPA Standard could not lawfully be applied to *any* firefighter candidates, and it likewise is loath to assume that the NFPA Standard could not lawfully be applied to any employed firefighter. But this assumption is inherent in Plaintiff's request for an injunction, which (as revised by Plaintiff), seeks to enjoin its application to *any* employed firefighter.

Finally, even if it had concluded that injunctive relief was authorized, the Court in its discretion would decline to order it. While the Court always stands ready to remedy past violations of anti-discrimination statutes and to award authorized injunctive relief where it finds such appropriate, it is hesitant to do so where so doing amounts to an attempt to proactively manage at least one aspect of the functioning of a municipal agency by directing specific agency policy on the front end and in perpetuity. This is the kind of thing that implicates concerns of federalism and the limitations on the role and competence of federal courts. *Cf. JDC Mgmt., LLC v. Reich*, 644 F. Supp. 2d 905, 924 (W.D. Mich. 2009) (quoting *Buell v. Hughes*, 596 F.Supp.2d 380, 388–89 (D. Conn. 2009) (dismissing teachers' class-of-one Equal Protection claim under Rule 12(b)(6) and noting, "It is not the role of the Court to micromanage the administration of the school system.")).[4] The undersigned in this kind of situation is, therefore, inclined to decline imposing broad-based policies on the front end, and instead stand ready to adjudicate case-specific alleged violations of

---

[4] Such concerns have been discussed generally, albeit in contexts factually and procedurally different from the one here involved, in cases like *Horne v. Flores*, 557 U.S. 433, 447–50 (2009) and *Valentine v. Collier*, 993 F.3d 270, 291–95 (5th Cir. 2021) (Oldham, J., concurring).

the law on the back end. In short, the Court declines to tell Nashville Fire Department what its permanent policy should be regarding this aspect of firefighters' fitness for duty. But with the decision in this regard being left in its hands, Defendant is accountable for that decision and any unlawfulness thereof.

Nonetheless, the Court wishes to recognize and alleviate some of Plaintiff's concerns that Defendant will once again violate the ADA by rigidly imposing the NFPA Standard against him during a fitness-for-duty examination. Accordingly, the Court will allow Plaintiff to forgo the necessity of filing a new lawsuit (and the corresponding burdens that would entail, such as an additional filing fee) if he contends that the NFPA Standard has been applied to him personally in a way that (according to him) violates the ADA, and instead, bring the issue to the Court's attention by moving to re-open the present case to seek injunctive relief.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion is **DENIED**. However, the Court will allow Plaintiff (upon motion) to re-open the present case to seek injunctive relief *if* he contends in the future that Defendant has applied the NFPA Standard to Plaintiff (such as during a during a fitness-for-duty examination) in a way that Plaintiff contends is violative of the ADA.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE